IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-01682-CNS-NRN

THOMAS PHIL MERCHANT,

Plaintiff,

v.

BARRY GOODRICH,
CHRISTIANNA CAPPELLUCCI,
BRIAN LOVATO,
ASHLEY MACEK, and
NAOMI HENSEN

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 74)**

---

**N. Reid Neureiter
United States Magistrate Judge**

This matter is before the Court on an Order, ECF No. 75, referring Defendants Barry Goodrich, Christianna Cappellucci,[1] Brian Lovato, Ashley Mackey, and Naomi Hensen's ("Defendants") Motion for Summary Judgment, ECF No. 74. Plaintiff Thomas Phil Merchant has not responded to the motion.

The Court has taken judicial notice of the Court's file and considered the applicable Federal Rules of Civil Procedure and case law. Now being fully informed and for the reasons discussed below, the Court **RECOMMENDS** that the Motion for Summary Judgment, ECF No. 74, be **GRANTED.**

---

[1] The Court notes that on November 26, 2024, Defendants filed a Suggestion of Death of Defendant Christianna Cappellucci. ECF No. 85.

**I.   PROCEDURAL HISTORY**

In an April 16, 2024 telephonic Status Conference attended by Mr. Merchant and counsel for Defendants, the Court ordered that Defendants file their Motion for Summary Judgment on or before April 25, 2024, and that Mr. Merchant file his response on or before May 24, 2024. ECF No. 73. Defendants filed the Motion for Summary Judgment on April 25, 2024. ECF No. 74.

When Mr. Merchant did not file a response by the May 24, 2024 deadline, the Court extended the deadline for Mr. Merchant to respond up to and including June 13, 2024, and ordered that "[i]f Plaintiff does not respond, the Court may consider the factual assertions in the Motion [for Summary Judgment] to be undisputed." ECF No. 77. The Court set a Motion Hearing for June 27, 2024. *Id.*

Mr. Merchant did not file a response by the June 13, 2024 deadline. Mr. Merchant and counsel for Defendants appeared at the June 27, 2024 Motion Hearing. ECF No. 80. At the Motion Hearing, the Court for a second time extended Mr. Merchant's deadline to file a response until July 23, 2024. *Id.*

Mr. Merchant subsequently filed a motion for extension of time. ECF No. 81. The Court granted the motion, and extended Mr. Merchant's response deadline for a third time up to and including September 5, 2024. ECF No. 83.

Mr. Merchant has not filed a response to the Motion for Summary Judgment. Accordingly, the Court considers the factual assertions in the Motion for Summary Judgment to be undisputed for the purposes of this motion. *See* Fed. R. Civ. P. 56(e).

## II. FACTUAL BACKGROUND[2]

### a. Amended Complaint Allegations

The Amended Complaint, ECF No. 21, contains the following allegations relevant to the Motion for Summary Judgment. Mr. Merchant was housed at Crowley County Correctional Facility ("CCCF") during the relevant period. He is diabetic and regularly requires insulin shots. To receive his shot, he waits to be called from his living unit to go to the Medical Line ("Med Line") via a facility-wide intercom system. On July 14, 2020, at approximately 3:05 p.m., Mr. Merchant asked a non-party officer whether Med Line had been called because he needed an insulin shot. The intercom system was broken at the time, and the officer did not hear the Med Line announcement on his radio. Mr. Merchant requested that the officer use his radio to ask Master Control whether the Med Line announcement had been made. The officer did not make the call until almost 3:30 p.m. Master Control then responded that the officer's call should have been made earlier, because the facility then had to prepare for the 4:00 p.m. daily facility count, and Mr. Merchant could not be released. Mr. Merchant was not released to Med Line until after 6:00 p.m. Because he was late, medical staff refused to provide his insulin shot. Mr. Merchant attempted to declare a medical emergency so that he could obtain his insulin shot, but this request was refused, and he did not receive an insulin shot until approximately 3:00 a.m. in the morning. Mr. Merchant subsequently filed an Incident Statement regarding the delay.

---

[2] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes, differs from a document's internal pagination.

A similar incident later occurred when Defendant Naomi Hensen (CCCF Unit Manager) did not hear the Med Line call on her radio on August 26, 2021 at 3:00 p.m. Mr. Merchant explained the problem to Hensen, and was then allowed to go to Med Line late. Mr. Merchant filed another Incident Statement regarding this second delay, but did not receive a response.

On October 15, 2021, Mr. Merchant filed an Informal Grievance about the insulin delays. Mr. Merchant alleges that, in retaliation for Mr. Merchant's complaints about the insulin issue, Defendant Brian Lovato (CCCF Unit Manager) removed Mr. Merchant from the Incentive Living Unit where he was housed. The stated reason for removing Mr. Merchant from this unit was that he was no longer employed in the CCI Dog Program. Mr. Merchant acknowledges that he quit his job as Clerk for the CCI Dog Program and became a Unit 3 Incentive Laundry Porter in September 2021. However, he alleges that the second job should have still qualified him to live in the Incentive Living Unit.

Defendant Ashley Macek (CCCF Unit Manager) responded to Mr. Merchant's Informal Grievance on October 21, 2021, stating that he "had quit the CCI Dog Program on his own." Macek's response did not address the insulin issue. Mr. Merchant later filed a Step I Grievance regarding the insulin issue.

On November 9, 2021, Lovato denied the relief requested in Mr. Merchant's Step I Grievance, and did not address the insulin issue. The next day, he filed a Step II Grievance. When he did not receive a response, he filed a Step III Grievance on December 24, 2021.

In a February 2022 meeting to try to resolve the insulin issue, Lovato, Hensen, and another CCCF staff member told Mr. Merchant that "it will be a priority to make sure that Med Line will be called at 3:00 PM on a consistent basis every day." ECF No. 21 at 12. However, even after this meeting, Mr. Merchant continued to experience the same issue—CCCF staff did not hear the Med Line call on their radio, and Mr. Merchant continued to experience delays in receiving insulin. However, Mr. Merchant was eventually reassigned to the Incentive Living Unit on April 3, 2022.

Mr. Merchant also alleges that he has not received other proper care regarding his diabetes. In particular, he alleges that he has never been offered a diabetic kit by CCCF staff, even though such kits should be available to CCCF inmates with diabetes. He alleges that although all diabetic inmates are supposed to have access to call button in case of emergency, the call buttons in CCCF do not work. He further alleges that he has not been offered soft-soled shoes as required as part of a settlement in another lawsuit.

On September 26, 2022, a CCCF staff member did not allow Mr. Merchant to go to Med Line at 3:00 p.m., and he was eventually released to get insulin at 3:45 p.m. He filed another incident statement regarding this delay.

Mr. Merchant alleges that Defendant Barry Goodrich (CCCF Warden) failed to properly train CCCF staff regarding medical treatment of inmates. He alleges that Defendant Christianna Cappellucci (CCCF Head of Clinical Services) is responsible for making sure CCCF is compliant with policies regarding the proper care of diabetic inmates.

Based on this delay accessing insulin, alleged retaliation for filing grievances related to the delay, and alleged denial of access to the grievance procedure, Mr. Merchant brings claims under 42 U.S.C. § 1983 for Eighth Amendment deliberate indifference and retaliation. Mr. Merchant's currently pending claims are asserted against Defendants Goodrich, Cappellucci, Lovato, Macek, and Hensen in their individual capacity. ECF No. 21.

### b. Undisputed Facts

Defendants have moved for summary judgment on all of Mr. Merchant's claims. In support of their motion, Defendants rely on the following facts, to which Mr. Merchant has not responded.

As a diabetic, Mr. Merchant typically receives a morning and afternoon insulin shot. Mr. Merchant testified that he was denied access to his afternoon insulin shot "about 30 times" over the course of six and a half years at CCCF. Merchant Dep. 14:8–15:5, ECF No. 74-1. He has never missed a morning shot and has never suffered any injury due to his diabetes. *Id.* 15:6–12. Nine other inmates who require insulin shots lived in the same housing unit as Mr. Merchant and experienced similar problems with receiving afternoon insulin shots. *Id.* 18:10–16.

Mr. Merchant testified in his deposition that he believes that these problems with accessing insulin occurred in part because of staff incompetence—testifying that "[t]hey just did not know how to run a diabetic med line." *Id.* 100:21–101:15. He believes that the insulin issues occurred in the afternoon, and not the morning, potentially because "none of the thugs were up at that time, so there [were] no problems going on." *Id.* 15:6–12. Mr. Merchant believed that approximately 70 percent of the delays were caused by

issues at the facility such as lockdowns and bad behavior by other inmates, and 30 percent were caused by CCCF staff missing radio calls due to a high workload. *Id.* 16:13–17:7.

Defendants Goodrich, Macek, and Lovato were only involved in the grievance process that Mr. Merchant initiated, and did not ever deny Mr. Merchant insulin. *Id.* 24:24–25; 33:13–15; 40:15–25. Defendant Cappellucci did not ever deny Mr. Merchant insulin and was not involved in the grievance process. *Id.* 29:6–13. Defendant Hensen refused Mr. Merchant access to insulin once when Mr. Merchant's unit was short staffed (she did not normally work in that unit) but released him approximately 30 minutes later when another staff member told her to do so. *Id.* 35:23–36:25; 19:2–20:11. Hensen wrote up Mr. Merchant after this encounter because he raised his voice when speaking to her. *Id.* Mr. Merchant agreed that he raised his voice towards Hensen. *Id.* This was the only encounter Mr. Merchant ever had with Hensen. *Id.* 38:14–20.

Mr. Merchant testified that, as a result of the Hensen write-up, Macek placed him on 90-day probation in the CCI Dog Program. *Id.* 49:9–24. He then voluntarily quit this job. *Id.* Mr. Merchant was removed from the Incentive Housing Unit because he quit the CCI Dog Program job. *Id.* 73:6–13. He testified that none of Defendants are in charge of housing placements at CCCF. *Id.* 73:14–74:8.

Plaintiff testified that he never spoke to any named Defendant about not receiving soft shoes, and he believes that the medical department, as a whole, was responsible for him not receiving the shoes. *Id.* 97:10–99:21.

7

### III. LEGAL STANDARDS

    a. **Motion for Summary Judgment**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Furthermore, a judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

The moving party bears the initial responsibility of providing the court with the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party "may not rest on mere allegations

8

or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Unsupported and/or conclusory allegations do not establish an issue of fact sufficient to defeat summary judgment. *MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005); *see also McVay v. W. Plains Serv. Corp.*, 823 F.2d 1395, 1398 (10th Cir. 1987); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). Conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

"The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52 (1986). However, "[i]f a party fails to . . . properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

### b. Pro Se Plaintiff

Mr. Merchant proceeds pro se. The Court, therefore, "review[s his] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations

omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### IV. ANALYSIS

#### a. Eighth Amendment Deliberate Indifference Claim

Prisoners have a constitutional right to adequate medical care, and recovery under § 1983 is available for deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To establish such a claim, a plaintiff must first allege that the deprivation is "sufficiently serious" as an objective matter to constitute a deprivation of constitutional dimension—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Strain v. Regalado*, 977 F.3d 984, 990 (10th Cir. 2020) (internal quotation marks omitted). Then, the plaintiff must allege the defendant was subjectively aware of that need and

that failing to treat it would pose an excessive risk to the inmate's health or safety. *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018). The subjective component of deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This inquiry "presents a high evidentiary hurdle" to a deliberate indifference claim against a prison official, who "must know about and disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006).

The Tenth Circuit recognizes two types of conduct constituting deliberate indifference. First, a medical professional may fail to treat a serious medical condition properly. Second, a prison official may "prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Sealock v. Colo.*, 218 F.3d 1205, 1211 (10th Cir. 2000). Medical personnel often face liability for failure to treat under the first type of deliberate indifference, but if "the medical professional knows that his role . . . is solely to serve as a gatekeeper for other medical personnel capable of treating the condition . . . he also may be liable for deliberate indifference from denying access to medical care." *Id*.

A delay in medical treatment constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. *Id*. at 1210. The Tenth Circuit has defined substantial harm to mean a "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 949–50 (10th Cir. 2001).

"Personal participation is an essential element of a § 1983 claim" against an individual defendant. *Camfield v. City of Okla. City*, 248 F.3d 1214, 1225 (10th Cir.

2001) (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996)), and "supervisor status by itself is insufficient to support liability." *Mitchell*, 80 F.3d at 1441 (citing *Rizzo v. Goode*, 423 U.S. 362, 376 (1976)).

Defendants do not challenge the objective component for purposes of this motion. However, they argue that undisputed evidence shows that none of Defendants ever denied Mr. Merchant access to insulin, except Hensen. Further, none of Defendants ever denied Mr. Merchant access to diabetic shoes. For purposes of this motion, these fact have been established. Mr. Merchant testified that Defendants Goodrich, Cappellucci, Macek, and Lovato never denied him insulin or diabetic shoes. Accordingly, Mr. Merchant cannot sustain a deliberate indifference claim against them.

Regarding Hensen, Mr. Merchant testified that in one instance she denied him access to insulin for approximately 30 minutes before being corrected by another CCCF staff member. Defendants argue that undisputed evidence shows that Hensen did not have the sufficiently culpable state of mind to sustain a claim for deliberate indifference. Mr. Merchant testified that he believed the delays in receiving insulin were due to lockdowns, bad behavior of other inmates, or staff being overwhelmed. ECF No. 74-1 at 16–17. Accordingly, there is no genuine issue of material fact as to whether Hensen was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that she had also "draw[n] the inference." *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Accordingly, the Court recommends that Defendants' motion for summary judgement on Mr. Merchant's Eighth Amendment claim be granted.

**b. Retaliation Claims**

"[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted). To prove a claim for retaliation, a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Id.*

Mr. Merchant brings a claim for retaliation, arguing that Defendants retaliated against him for complaining about the insulin delay issues by removing him from the Incentive Housing Unit. Defendants argue that Mr. Merchant has not raised a genuine dispute of fact as to whether a retaliatory motive was the "but-for" cause of being removed from the Incentive Housing Unit. They argue that Mr. Merchant raised his voice towards Hensen, Hensen wrote him up for raising his voice, he later voluntarily quit his job, and because he quit his job, he was no longer eligible to live in the Incentive Housing Unit.[3]

After evaluating the evidence in the record, the Court agrees. Mr. Merchant voluntarily quit his job in the CCI Dog Unit, which resulted in his removal from the Incentive Housing Unit. ECF No. 74-1 at 49. No facts in evidence indicate that a retaliatory motive caused Mr. Merchant's removal. Accordingly, the Court recommends

---

[3] Mr. Merchant testified that he obtained a different job such that he was still qualified to live in the Incentive Living Unit, ECF No. 21 at 17, but that a computer error showed that he did not have a qualifying job. Mr. Merchant suspects that Macek or Lovato may have worked together to remove this job from his records. However, he has not presented any admissible evidence supporting this suspicion.

that Defendants' motion for summary judgement on Mr. Merchant's retaliation claim be granted.

## V. CONCLUSION

In light of the foregoing, it is hereby **RECOMMENDED** that the Motion for Summary Judgment (ECF No. 74) be **GRANTED** and the claims against Defendants be **DISMISSED** without prejudice.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge,** *Thomas v. Arn*, **474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions.** *Makin v. Colo. Dep't of Corr.*, **183 F.3d 1205, 1210 (10th Cir. 1999);** *Talley v. Hesse*, **91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Dated at Denver, Colorado this 7th day of January, 2025

_____
N. Reid Neureiter
United States Magistrate Judge